**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| PIMPAKTRA RUST | : | |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| vs. | : | CIVIL ACTION FILE |
| | : | NO.: 7:21-cv-00105 |
| VINA ELISE RUST, | : | |
| CHAKDHARI ANISSA RUST, individually | : | |
| and as Co-Executors of the ESTATE OF | : | |
| RICHARD C. RUST, successor in interest as | : | |
| executor of the ESTATE OF PHILIP G. RUST | : | |
| JR.; THE BRYN MAWR TRUST | : | |
| COMPANY OF DELAWARE, a limited | : | |
| purpose trust company, in its capacity as | : | |
| trustee of the trusts created for the benefit | : | |
| of Richard C. Rust under agreement dated | : | |
| July 10, 1953, as amended; and GOODENOW, | : | |
| LLC, a Delaware limited liability company, | : | |
| | : | |
| DEFENDANTS. | : | |

**VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

COMES NOW Plaintiff Pimpaktra Rust, by and through undersigned counsel, and hereby

amends her Complaint as follows:

1.      This Amended Complaint is filed per the Court's Order granting Plaintiff's Motion

for Leave to Amend Complaint and Join Goodenow LLC as a Defendant.

PARTIES, JURISDICTION, AND VENUE

2.      Defendant Vina Elise Rust ("Vina") is an individual and a resident of Seattle,

Washington.

3.      Vina is subject to the personal jurisdiction of this Court pursuant to Georgia's long

arm statute, O.C.G.A. § 9-10-91, as Vina has an interest in real property in Georgia which is the

subject matter of this action, and Vina has committed the fraudulent acts set forth in this Amended Complaint in Georgia. This action arises out of and relates to contacts of and acts committed by Vina in the State of Georgia.

4.    Defendant Chakdhari Anissa Rust ("Anissa") is an individual and a resident of Sebastopol, California.

5.    Anissa is subject to the personal jurisdiction of this Court pursuant to Georgia's long arm statute, O.C.G.A. § 9-10-91, as Anissa has an interest in real property in Georgia which is the subject matter of this action, and Anissa has committed the fraudulent acts set forth in this Amended Complaint in Georgia. This action arises out of and relates to contacts of and acts committed by Anissa in the State of Georgia.

6.    Defendant The Bryn Mawr Trust Company of Delaware ("BMTC") is a Delaware limited purpose trust company with offices located at 20 Montchanin Road, Suite 100, Greenville, Delaware, 19807. BMTC is subject to the personal jurisdiction of this Court pursuant to Georgia's long arm statute, O.C.G.A. § 9-10-91, as BMTC has an interest in real property in Georgia which is the subject matter of this action, and BMTC has transacted business in Georgia, as described herein.

7.    Philip Goodenow Rust, Jr., prior to his death, was a resident of Thomas County, Georgia. His estate, Defendant Estate of Phillip Goodenow Rust, Jr. (the "Estate"), was probated in Thomas County, Georgia and owned property in Thomas County, Georgia. Therefore the Estate is subject to the personal jurisdiction of this Court.

8.    Richard C. Rust served as executor of the Estate until his death in November 2019. Plaintiff, Vina, and Anissa serve as co-executors of the Estate of Richard C. Rust. To the extent

necessary, Plaintiff brings claims in her individual capacity, but all parties have notice as co-executors of the Estate of Richard C. Rust.

9.     This Court has subject matter jurisdiction over these matters pursuant to 28 U.S.C. § 1332 because the dispute is between citizens of different states and the amount in controversy is more than $75,000.00.

10.     This action was originally filed in Thomas County, Georgia Superior Court. Pursuant to 28 U.S.C. § 1441, venue is proper in the Middle District of Georgia, Valdosta Division as the district and division in which Thomas County, Georgia lies.

11.     This Court has jurisdiction over this matter and venue is proper in this Court.

## FACTUAL BACKGROUND

12.     The real property which is the subject of this matter (hereinafter, the "Property") is comprised of 947.924 acres located in Land Lots 165, 166, 167, 194, 195, and 196 in the 18th Land District of Thomas County, Georgia. The legal description of the Property is attached hereto as Exhibit A.

13.     At the time of his death, Philip Goodenow Rust, Jr. ("PGR") owned the Property.

14.     During his lifetime, PGR created the Philip G. Rust, Jr. Trust (the "Trust") via a trust agreement dated July 10, 1953 by and between PGR as grantor and Wilmington Trust Company ("Wilmington Trust") as trustee. The trust agreement was amended and restated in several supplemental trust agreements. A copy of the trust agreement is attached hereto as Exhibit B (the "Trust Agreement").

15.     PGR passed away on October 25, 2010. At the time of his death PGR was a Georgia resident.

16.     In PGR's Last Will and Testament (the "PGR Will") (attached hereto as Exhibit C), PGR directed "all real estate or interests in real estate" to "pass as part of [his] residuary estate under Article THIRD." Exhibit C, Article Second.

17.     Article THIRD of the PGR Will provided that "[a]ll the rest, residue and remainder of [PGR's] estate, whether real, personal or mixed, of whatever nature and wherever located . . . be added to the principal" of the Trust "to be held, administered and distributed as part thereof."

18.     Under the terms of the Trust, upon PGR's death, all retained real property, including the Property, was to be held, administered and ultimately distributed pursuant to the Trust. The Property was to be used by PGR's siblings (including RCR) for their lifetime benefit, and then ultimately vest upon their death to PGR's nephews and nieces.[1]

19.     PGR was survived by three brothers: Richard, Francis, and Henry.

20.     The families of Francis and Henry were each allocated a one-third interest in the trust principal. All the real estate devised to the Trust was retained and allocated to Richard C. Rust ("RCR") for his lifetime benefit, vesting as his family's one-third share. As a result, RCR had a life estate in the Property, with the real property to be distributed to his children per stirpes.

21.     RCR had three children: Plaintiff, Anissa, and Vina (the "Sisters").

22.     RCR was named as executor of the PGR Will and advisor to the Trust.

### Formation of Goodenow LLC

23.     Notwithstanding the terms of the Trust, after PGR's death the initial trustee refused to accept legal title to PGR's real property per the Trust Agreement and Georgia law.[2] Instead, Wilmington Trust directed PGR's executor, RCR, to create a separate entity for trust

---

[1] "Trustee shall divide the then remaining principal of such [brother's] share, to the extent not fully and effectively appointed together with any undistributed or accumulated income, into shares for such brother's then living issue per stirpes." Trust Agreement IV.B.3.

[2] Under O.C.G.A. § 53-12-25(a) transfer of property to a trust requires a transfer of legal title to the trustee.

administrative purposes allowing the Trust to indirectly and/or constructively retain title/ownership and administer the real estate placed into trust pursuant to the Trust Agreement.

24.     The Trust allowed for holding principal in a consolidated form: "Except when a division is necessary for purposes of distribution, hold separate funds in one consolidated fund in which the separate funds shall have undivided interests." Exhibit B, Article Ninth, F.[3]

25.     At the insistence of the initial trustee, on September 29, 2011 Goodenow LLC (the "LLC") was formed as a Delaware limited liability company, serving as a shell-entity to hold the real property that had been devised into the Trust, which included the Property in which RCR held a life estate and right to use freely. RCR did not reside in Delaware and none of the real estate was located in the state of Delaware.

26.     The LLC was not formed to restrict, encumber, or to permanently convert the assets into a form or character that would be contrary to a later equal division of the assets to the remainder beneficiaries, but rather to facilitate and further PGR's wishes outlined in the Trust Agreement.

27.     PGR's executor could not permanently divert the real property into an entity that would "limit, enlarge or change any authority, power, restriction or privilege" over this real estate devised under the PGR Will, O.C.G.A. § 53-8-10(a)(2010). The conveyance could not, and did not, permanently divert the authority, powers and privileges to administer the trust property from the Trustee to LLC or its managers.

28.     On information and belief, the LLC was never intended to create an ownership structure or asset conversion, or diversion of administrative power that would either occur or continue beyond the term of the Trust, nor was it intended to create an ownership structure or allow

---

[3] The Will includes a similar provision, allowing the executor to hold assets in a consolidated format "except when division is necessary for purposes of distribution." Exhibit C, Article Fifth, E.

an investment that would permit the inequitable treatment of any of RCR's daughters or thwart PGR's clear intent with respect to the trust beneficiaries.

29.     On April 30, 2012, Wilmington Trust, as trustee of the Trust, and Wilmington Trust, as the initial member of the LLC in its fiduciary capacity for the Trust, entered into an operating agreement for the LLC (the "Operating Agreement").  The Operating Agreement is attached hereto as Exhibit D.  The initial trustee would own 100% of the units of the LLC.

30.     The Operating Agreement directed for the LLC to be manager-managed, with the sole manager being the then lifetime beneficiary of the Trust, RCR. The Operating Agreement purportedly delegated authority over the administration of real property, including the Property, from the trustee to the LLC manager, RCR, then purportedly to any successor manager. As is clear from the terms of the Trust, and notwithstanding anything in the Operating Agreement, the LLC manager's authority could not be greater than the term and scope of authority granted to the trustee under the Trust Agreement or by law. Here the term of authority possessed by the trustee is limited by the term of the Trust which has expired.

**Invalid Conveyance of the Property**

31.     On May 14, 2012 RCR, as executor of the Estate, purported to deed the Property into the LLC in contravention of the Trust, and without the consent of Plaintiff (a remainder beneficiary of the Trust), by executing an Executor's Deed of Assent (the "Deed"). The Deed, attached hereto as Exhibit E, was recorded in the real property records of Thomas County, Georgia at Deed Book 1765, page 85 on May 18, 2012.

32.     The Deed was an invalid and improper transfer under Georgia law, as RCR as executor of the Estate did not have authority to convey the Property to any party other than the Trustee of the Trust per the terms of the PGR Will and Trust Agreement. Upon PGR's death the

Property was to become part of the Trust, per the PGR Will. Thus, RCR should have executed an Executor's Deed of Assent conveying the Property to the initial trustee in fee simple, and any other transfer of the Property by RCR as executor of the Estate to a party other than the Trust was improper.

33.     RCR did not manage the real estate in the Trust using the LLC. Instead, RCR treated the LLC as a holding entity through which managerial functions could be carried out, as was apparently intended by RCR and the trustee when they jointly caused a purported transfer of the Property to the LLC. In 2013, RCR entered into a lease agreement with the LLC for all the properties to which he was a sole lifetime beneficiary. RCR entered into the lease in his individual capacity and as the manager of the LLC.

34.     On June 17, 2016 Wilmington Trust was removed as trustee of the Trust, and BMTC was appointed as successor trustee of the Trust. BMTC accepted the appointment as trustee and was charged with administering the Trust in accordance with the terms of the Trust Agreement, including with respect to the Property.

## Ownership and Management of the Property After the Death of RCR

35.     RCR passed away on September 23, 2019.

36.     Under the terms of the Trust, upon RCR's death, BMTC (as trustee) should have "divide[d] the then remaining principal of [RCR's] share, to the extent not fully and effectively appointed together with any undistributed or accumulated income, into shares for such brother's then living issue, per stirpes." Exhibit B, Article Fourth, B.3. The division of Richard's share should have been in equal shares per stirpes unencumbered by any contractual or other encumbrances.

37.     While RCR had the authority under the Trust Agreement to exercise a power of appointment to reallocate the distribution of the Trust's principal between the Sisters (thereby overriding PGR's bequest of distribution per stirpes), RCR's will (attached hereto as Exhibit F) explicitly stated his intent not to exercise such power of appointment. Further supporting the plaintiff's contention is that RCR conveyed the Property to the LLC in his capacity as executor of PGR's estate, not in his individual capacity or in his role as advisor.  RCR never acted in his individual capacity to exercise any such power of appointment.

38.     The PGR Will granted broad authority to PGR's executor to dispose of his estate properties, but importantly not his real estate and other property that were to be added directly to the Trust principal and which were to vest, upon the death of RCR, to the Sisters per stirpes.

39.     The Trust was to terminate upon RCR's death, and thus any authority purportedly flowing from the Operating Agreement after the expiration of the Trust would be ineffective and a nullity. Pursuant to the Trust, the Sisters became the beneficial owners of a one-third, undivided interest in the corpus of the Trust, including the Property. After RCR's death the Sisters appointed themselves as successor managers of the LLC, pursuant to section 4.1(c) of article IV of the Operating Agreement, holding authority limited to assisting with the distribution of the Trust principal together with BMTC, and those administrative processes associated with unwinding the LLC consistent with the terms of the Trust in accordance with the Trust Agreement.

40.     The Operating Agreement anticipated and allowed for the termination of the LLC by the LLC managers, Section VII (8). It also anticipated and allowed for judicial dissolution if the LLC managers did not unwind and dissolve the LLC.

41.     Plaintiff accepted her appointment as a successor manager of the LLC on a temporary basis and functionally to ensure the administrative distribution of the Trust corpus as

intended, and only until the Trust principal was properly distributed per stirpes. Vina and Anissa, however, have treated their appointment as successor managers and the authority purportedly flowing therefrom as perpetual notwithstanding the terms of the Operating Agreement and the Trust Agreement and notwithstanding the circumstances of the conveyance by RCR, as executor, of the Property to the LLC.

42.     Nearly two years after RCR's death, the Trust property, including the Property, is being treated by BMTC and the Sisters as if it is owned by the holding company independent of any trust obligation, rather than by the Sisters as tenants in common. In other words, the Trust property has not been distributed per stirpes with each beneficiary obtaining an equal share of the Property unencumbered by the restrictions associated with the LLC structure.

43.     Prior to RCR's death, which resulted in termination of the Trust, the LLC was treated as a pass-through shell entity for administrative purposes. It held no bank account, expended no funds, had no employees, and leased all its property out using the administrative function of the LLC.  The Trustee held 100% of the units of the LLC, but had never actually held title to the Property as was required by the Trust.

44.     At the time of RCR's death, the LLC had no expenses and no debt and the Property could have been conveyed free and clear to the three sister beneficiaries as intended.

45.     Since RCR's death in September 2019, Vina, Anissa, and BMTC as trustee have impeded distribution of the Trust assets to Plaintiff, including the Property, withholding distribution unless Plaintiff agrees to be bound by the terms and conditions of the Operating Agreement entered into by the Trustee in its fiduciary capacity.

46.     The Sisters have re-purposed the LLC from an innocuous shell entity into a property management company under their absolute control. BMTC has taken no action to protect the

Property following RCR's death and ensure it has been preserved free of all trustee-created encumbrances and distributed to the three sister beneficiaries as intended.

47.     Vina and Anissa presumptively contend they have the authority to operate all real property as co-managers, including the right to control the Property through a purported majority manager control of 2-1 for all operating decisions for the LLC, including decisions related to marketing, diverting sale proceeds, and conveying title to property, specifically the Property.

48.     By dividing and purporting to distribute 1/3 of the LLC as membership units to each beneficiary, BMTC allowed a separation of the "rights and control" over the Property from its "ownership," such that the control of the asset became subject to a majority of managers as opposed to distributing assets to the beneficiaries with full ownership attributes, i.e., the right to own it, enjoy it, and make productive use of the trust asset.

49.     Since RCR's death, Vina and Anissa have refused to acknowledge that the Trust intended and required that the Sisters share title to the Property as tenants in common; have refused to make decisions with respect to the possible sale of the Property as tenants in common (i.e., all must agree); have refused to acknowledge the proceeds of any sale would be per stirpes; have refused to make financially sound decisions, by operating the Property at a loss instead of income-producing; have been unwilling or incapable of managing the employees of the Property (some of whom live on the Property); and have refused to prepare a budget or provide any explanation as to the reasonableness and necessity of the ongoing and excessive expenses related to their "management" decisions including their delegation of all of the Property to others.

### Attempts to Market and Sell the Property and Undercut Plaintiff's Interest

50.     In October 2019 the Sisters began discussing which of the inherited properties would be retained and which sold, including the possibility of selling the Property.

51.     The sisters actually met and agreed to sell the Property, presumptively with an intended distribution of the proceeds equally to each Sister. The Sisters agreed that Plaintiff would engage a listing broker.

52.     Specifically, on November 8, 2019 the sisters met and agreed to sell the Property in Thomasville, presumptively with an intended distribution of the proceeds divided equally to each Sister. The Sisters agreed that the Plaintiff would gather facts and engage a listing broker.

53.     In November 2019, Plaintiff met with Ben McCollum, a broker and principal of the Wright Group in Thomasville, Georgia, to obtain his opinion as to the value of the Property, were the Sisters to list and market the Property for sale.

54.     By Thanksgiving 2019, Plaintiff informed Vina and Anissa of the broker's proposal to list the property for $7 million, without incurring further expenses and that the Property would net approximately $2.2 million per Sister. In early December 2019, during an estate meeting Vina and Anissa reversed their position as to the sale of the Property, and refused to move forward with an expedited sale.

55.     In January 2020, the Wright Group provided Plaintiff with a marketing proposal (attached hereto as Exhibit G) and shared the proposal directly with Vina and Anissa for their review. The Wright Group's proposed listing price for the Property was $6,995,000.

56.     In October 2020 Vina and Anissa, through their delegates, approached Jon Kohler and Associates ("Kohler") regarding the listing and marketing of the Property for sale.

57.     Vina and Anissa did not notify Plaintiff of their discussions with Kohler until January 2021, well into the listing process and a year after they reversed their decision to sell the Property, ending all property associated expenses.

58.     In January 2021 Plaintiff was provided a listing agreement with Kohler (attached hereto as Exhibit H) for review, to be signed by the Sisters individually and as co-managers of the LLC, all listed as sellers and proceed recipients. The proposed listing price for the Property was $6,900,000.

59.     The Sisters broke off contact in February 2021 and discussions related to the listing of the Property stalled.

60.     Three months later, in May 2021, Anissa re-engaged Kohler to discuss listing the Property for sale for $5,645,400, which is $1,254,600 less than the price discussed in January, with only the LLC listed on the proposed contract as the "seller."

61.     Plaintiff refused to sign the proposed listing agreement because the listing price was significantly below both market value and the price discussed in January.

62.     Plaintiff also refused to sign the proposed listing agreement since it purported to be on behalf of the LLC as the seller, with proceeds to be paid to the LLC rather than to each of the Sisters individually, in violation of the terms of the Trust, which called for the Sisters to receive their shares per stirpes.

63.     Despite Plaintiff's objections, and without proper representation by a licensed real estate broker, Vina and Anissa discussed marketing and selling the Property substantially below market value.

64.     Weeks later, with no listing agreement in place, the Wright Group approached Vina and Anissa about a possible buyer of the Property.

65.     Vina and Anissa notified Plaintiff of the offer, but said they had received a "higher bid" which was not subject to an inspection period. Vina and Anissa refused to provide Plaintiff with any specifics as to the "higher bid."

66. Plaintiff immediately requested information regarding the "higher bid" from Kohler via email (attached hereto as Exhibit I). Kohler had no knowledge of the higher bid, explaining that since the listing agreement had not been signed by Plaintiff and a listing price was not agreed upon, he was not soliciting offers for the Property, citing the RLI Code of Ethics.

67. Vina and Anissa have kept Plaintiff in the dark regarding this mystery offer and have attempted to negotiate the sale of the Property without proper authority.

**Unauthorized Loans Against the Property**

68. In furtherance of this scheme, Vina and Anissa have wrongfully attempted to restrict and encumber the Property and abuse their position as managers of the LLC by voting 2 to 1 to loan money to the LLC for "operating expenses" at 7% interest, well beyond current market interest rates and for expenses that are not reasonable. Vina and Anissa purport to have the LLC agree to repay such loans without Plaintiff's agreement and in an apparent effort to force a sale of the Property below market value and force repayment of the loans, as well as to siphon value from the LLC away from Plaintiff.

69. The "loans" were obtained by Vina and Anissa opening and then personally funding a bank account for the LLC and retroactively issuing unauthorized, illegal promissory notes purportedly secured by the Property and other real properties held by the LLC. Vina and Anissa contend by virtue of the notes that they are preferred creditors against the LLC holding the trust Properties, preferred before any equal distribution of the trust assets to all three intended beneficiaries.

70. Since the LLC has no liquid assets or significant income to fund the unnecessary expenses Vina and Anissa have caused the LLC to incur (which total nearly $1 million annually), Vina and Anissa are loaning the LLC money over Plaintiff's objections. The only practical effect

is to create more losses and indebtedness inside the LLC in an effort to erode Plaintiff's share of the Trust and strip her of her right to have received the Property free and clear as a tenant in common, with all rights under Georgia law, including the right to seek a partition of the property, which could have been done long ago but for Vina and Anissa's actions.

71.     Vina and Anissa have resisted all of Plaintiff's efforts to stop or mitigate the losses resulting from mismanagement of the Property.

72.     Establishing a financial account for the LLC would have been unnecessary had the Trust properties been distributed in a timely manner after RCR's death in accordance with the terms of the Trust Agreement.

73.     Vina and Anissa have wrongfully treated the Operating Agreement as if it bestowed upon them absolute authority free from all Trust obligations, when in reality the sub-contracted authority held by any LLC successor managers after the term of the Trust concluded is not, and cannot be presumed to be, greater than the scope of authority delegated by the trustee. The authority, if any, of any successor manager of the LLC was limited by the terms of the Trust, which required the trustee and now manager to divide per stirpes and distribute the Trust property upon RCR's death.

74.     Defendants are acting contrary to the intent of PGR by refusing to acknowledge the proper ownership of the Property, and further, by impeding and delaying the equitable distribution of Trust principal among beneficiaries, including Plaintiff's one-third undivided interest in the Property. At most, the LLC was intended to exist solely during the pendency of the Trust for administrative purposes, and no trustee or executor had the authority to restrict or divert the rights of the remainder beneficiaries, including Plaintiff. The LLC was intended to facilitate the Trust and further its purposes and plan of disposition, not undermine them.

75. The trustee-required LLC—invalidly funded with trust assets—cannot be repurposed to assert authority allowing for two remainder beneficiaries to oppress a third and effectively deprive her of her one-third interest in the Property as a tenant in common, i.e. allow the privileges, rights and control of the Property to be separated from its rightful ownership.

76. As a result of Defendants' conduct, Plaintiff is undertaking all efforts to seek the dissolution of the LLC and has sought relief in an action filed in Delaware for judicial dissolution. That action is separate and distinct from this action which seeks, among other things, a declaratory judgment as to the rightful ownership of the Property, which is situated in Georgia.

77. Plaintiff faces an imminent threat of the listing and sale of the Property by Vina and Anissa, using their purported authority as co-managers of the LLC. Plaintiff likewise faces an imminent threat of the sale of the Property for less than market value and a reduction in the net proceeds she would otherwise obtain as a result of Vina and Anissa's unauthorized "loans" and other misconduct. Plaintiff faces imminent threat by the Defendants' actions to withhold Plaintiff's trust distribution, and the refusal of BMTC to preserve and properly distribute Plaintiff's share of the trust assets, including the Property.

### BMTC Holds an Interest in the Property

78. Under the Trust Agreement, PGR's intent was clear that the assets of the Trust (including the Property) pass outright and free from the Trust to the Sisters at RCR's death as one-third undivided interests in the Trust property, without any restrictions or encumbrances, not as minority membership interests in the trustee-created LLC with no market or discernable value.

79. Vina and Anissa, with the assistance of BMTC, are furthering their own interests, apparently intent on depriving Plaintiff of the full value of, and squeezing Plaintiff out of, her one-third undivided interest in the Property.

80.     On November 6, 2019 and February 20, 2020 Plaintiff objected to BMTC purporting to distribute Trust property in the form of membership interests in the LLC, as such distribution would prevent the equitable division, use, and enjoyment of the Trust property among the Sisters as intended by PGR and RCR. Plaintiff instead requested that the LLC be dissolved and the Trust property be divided and distributed in equal shares. Because the LLC purported to put contractual or other limitations and encumbrances on the trust assets, include the Property, BMTC should have taken steps to remove any such limitations or encumbrances.

81.     On May 8, 2020 BMTC sent to Plaintiff a Notice of Termination of Trust and Period to Initiate Claims (attached hereto as Exhibit K), advising Plaintiff that BMTC had ceased acting as trustee of the Trust and that "the Trust has terminated pursuant to Article FOURTH, Section B, Paragraph 3 of the Trust Instrument in equal one third (1/3) shares to each of you…These assets will be distributed in kind, without liquidation or reorganization."

82.     The Notice of termination was accompanied by a *Waiver, Release and Indemnification* (attached hereto as Exhibit L), written by BMTC that would indemnify the trustee for any wrongdoings, in exchange for releasing the trust properties to the intended beneficiaries encumbered by the terms and conditions of the Operating Agreement.  It was wrong for BMTC to ask a beneficiary to do so under the circumstances as it was contrary to the intent of the Trust. By doing so, BMTC purported to affirm the existence, validity, and legal effect of the LLC and its perpetual existence and authority to own and control assets, including the Property, that should have been distributed in equal shares to the Sisters (per stirpes).

83.     On March 25, 2021 Vina and Anissa accepted their respective membership interests in the LLC by executing the form Assignment and Assumption Agreement provided by BMTC.

84. Under the PGR Will, the Property was bequeathed to the trustee who was directed to "add the properties to the principal of the trust" for distribution under the Trust Agreement, a trust that granted PGR's siblings a life-estate in any retained real estate, and upon termination to distribute per stirpes to the Sisters.

85. Even if RCR transferred his own interest in the Property to the LLC, his transfer was limited to his life estate per the terms of the Trust[4].

86. The Deed stated the LLC was "[t]o have and to hold . . . in as full and ample manner as the same was being held and possessed by the Philip G. Rust, Jr. Trust."

87. Any interest the LLC allegedly held in the Property was limited to RCR's lifetime, and the remainder interest reverted back to the Trust upon RCR's death to be distributed to the Sisters per stirpes.

88. The Deed purported to convey all undivided interest owned by PGR at the time of his death to the LLC. Since PGR's interest in the Property was subject to the terms of the Trust and was beneficially held by the Trust beneficiaries, the Estate had no interest it could convey to the LLC and any such conveyance was subject to the terms of the Trust and was beneficially held by the beneficiaries. No purported conveyance inconsistent with the PGR Will and the terms of the Trust could operate to convey title to the LLC in fee simple beyond the term of the Trust.

89. BMTC assumed all responsibilities under the Trust as successor trustee to Wilmington Trust, the initial trustee. As such, BMTC accepted the terms of the Trust, which included the ownership of the Property for the benefit of the beneficiaries.

90. BMTC, as trustee of the Trust, had a duty to take all actions necessary to divide and distribute the Trust property, including the Property, per stirpes to the Sisters upon RCR's death,

---

[4] See O.C.G.A. § 44-6-87, stating "[n]o forfeiture shall result when a tenant for life purports to sell the entire estate in lands. In such a case, the purchaser shall acquire only the interest of the life tenant."

including any action necessary to clear and cloud placed on title by the trustee and distribute it to the Sisters as tenants in common.

91. Since the Deed was an invalid, improper transfer, BMTC (and not the LLC), holds Plaintiff's one-third interest in the Property in its capacity as trustee of the Trust. BMTC not only failed to take the necessary actions to fulfill its duties as trustee to distribute the Property to the Sisters, but BMTC took actions inconsistent with its duties and which purport to affirm the existence and validity of the LLC and the conveyance of the Property to the LLC.

92. BMTC has failed to fulfill its duties as trustee, including refusing to distribute to Plaintiff her interest in the Property, and instead seeks to transfer to Plaintiff an interest in the LLC.

93. BMTC has a legal and equitable direct ownership interest in the Property, which constitutes real property located in Georgia.

94. BMTC stepped into the shoes of the initial trustee when it agreed to serve as successor trustee and knew or should have known the Trust held a legal and equitable direct ownership interest in the Property and that the purported conveyance to the LLC was an administrative structure for the use and management of the Property by RCR during his lifetime only.

95. BMTC serves as successor trustee for the Trust which currently holds a legal and equitable direct interest in real property in Georgia.

96. In its capacity as trustee, BMTC transacts business in Georgia by actively owning and/or managing the Trust property located in Georgia, including but not limited to the time period following RCR's death during which BMTC held legal and equitable title to the Property, no trust advisor was legally serving, and during the time when BMTC was purporting to transfer the

Property indirectly to the Sisters by seeking to distribute units of an LLC which purported to own the Property.

97.     BMTC conversed via email with Wilmington Trust about the value and cost basis of real and personal property in the Trust.

98.     BMTC reviewed documents from Wilmington Trust showing that the Property and other real property was held by the Trust.

99.     Wilmington Trust acknowledged to the United States federal government via form 8939 (attached hereto as Exhibit J) that it was the recipient of the Property and other real property from the Estate.

100.    Wilmington Trust failed to renounce and decline the addition of PGR's real property to the Trust if that is what it truly intended to do despite that being clearly contrary to the PGR Will.

101.    Wilmington Trust used the LLC as an alter ego to manage and/or administer the Property owned by the Trust. Subsequently, BMTC as successor trustee, used the LLC as an alter ego to manage and/or administer the Property owned by the Trust.

102.    BMTC has transacted business in Georgia in its role as successor trustee to the Trust.

## COUNT I – DECLARATORY JUDGMENT AS TO OWNERSHIP INTERESTS IN THE PROPERTY

103.    Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraph 1 through 102 of her Second Amended Complaint as if fully stated herein.

104.    An actual controversy exists between Plaintiff and Vina and Anissa, and none of the parties have sought by any other legal action to have their rights adjudicated with respect to legal title to the Property.

105.	Plaintiff, Vina, and Anissa are interested in the determination of their rights and liabilities with respect to the Property, and the ends of justice require that declaratory relief be granted.

106.	Specifically Plaintiff requires a declaration from this Court that: (a) the Sisters own the Property as tenants in common, each entitled to an immediate distribution by deed of her one-third undivided interest in the Property as required under the Trust, free and clear of any liens and encumbrances, with all rights attendant thereto pursuant to Georgia law; (b) the Deed was an invalid transfer, or in the alternative, was limited to the life of RCR; (c) the LLC does not hold title to the Property; and (d) the Property may not be listed or sold without approval and consent of all the Sisters.

107.	Plaintiff prays this Court enter a declaratory judgment that (a) the Sisters own the Property as tenants in common, each entitled to an immediate distribution by deed of her one-third undivided interest in the Property as required under the Trust, free and clear of any liens and encumbrances, with all rights attendant thereto pursuant to Georgia law; (b) the Deed was an invalid transfer, or in the alternative, was limited to the life of RCR; (c) the LLC does not hold title to the Property; and (d) the Property may not be listed or sold without approval and consent of all the Sisters.

## COUNT II – INJUNCTIVE RELIEF AS TO VINA AND ANISSA

108.	Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraph 1 through 102 of her Second Amended Complaint as if fully stated herein.

109.	Because Vina and Anissa have indicated their intent to transfer or encumber title to the Property by actively taking steps to list and market the Property below fair market value and without Plaintiff's consent, an interlocutory injunction should be issued by the Court pursuant to

O.C.G.A. §§ 9-4-3(b) and 9-11-65(b), enjoining Vina and Anissa from selling the Property until such time as this Court shall declare the rights and interests of the parties.

110.     If such interlocutory injunction is not issued by the Court, Plaintiff will suffer immediate and irreparable injury, loss, and damage.

111.     Plaintiff is legally and equitably entitled to preliminarily enjoin and restrain Vina and Anissa from selling the Property, or otherwise affecting their respective interests in the Property.

112.     Plaintiff respectfully requests that this Court issue an interlocutory injunction enjoining and restraining Vina and Anissa from transferring or encumbering title to the Property or otherwise affecting Plaintiff's interest in the Property, until such time as this Court shall issue judgment declaring the rights and interests of the parties hereto.

## COUNT III – DECLARATORY JUDGMENT AS TO BMTC'S DUTIES AND OBLIGATIONS WITH RESPECT TO DISTRIBUTION OF THE PROPERTY

113.     Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraph 1 through 102 of her Second Amended Complaint as if fully stated herein.

114.     An actual controversy exists between Plaintiff and BMTC, and neither of the parties have sought by any other legal action to have their rights adjudicated with respect to legal title to the Property.

115.     Plaintiff and BMTC are interested in the determination of their rights and liabilities with respect to the Property, and the ends of justice require that declaratory relief be granted.

116.     Plaintiff is a beneficiary of the Trust and is entitled to Plaintiff's one-third interest in the Property currently held by the Trust contrary to the terms of the Trust Agreement and the intent of the Trust settlor, PGR.

117.     BMTC is the trustee of the Trust as successor to Wilmington Trust. Accordingly, BMTC is a necessary and/or indispensable party to this lawsuit and should be subject to the judgment of this Court to take actions necessary to distribute the Property free and clear to the Sisters as tenants in common.

118.     Plaintiff, as a beneficiary, is interested in the proper administration of the Trust pursuant to the terms and conditions of the Trust Agreement.

119.     Pursuant to O.C.G.A. § 9-4-4, Plaintiff is entitled to have a declaration of rights with respect to the Trust and a declaratory judgment. Specifically, § 9-4-4 provides in relevant part that "any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary … or beneficiary in the administration of a trust or of the estate of a decedent … may have a declaration of rights or legal relations in respect thereto and a declaratory judgment:…(2) To direct the executor, administrator, or trustee to do or abstain from doing any particular act in his fiduciary capacity; or (3) To determine any question arising in the administration of the estate or trust … [.]"

120.     Pursuant to O.C.G.A. § 9-4-4, Plaintiff is entitled to a declaration to determine title to property in which the Trust has or is purported to have an ownership or other interest.

121.     Pursuant to O.C.G.A. § 9-4-4, Plaintiff is entitled to a declaratory judgment that BMTC is required to distribute the Trust property, including the Property, equitably and in accordance with the Trust Agreement and to enjoin the conduct of BMTC inconsistent therewith, including but not limited to attempting to distribute (and seek a release for itself) of the LLC units to Plaintiff instead of her rightful one-third share of the Property as a tenant in common.

122.     Pursuant to O.C.G.A. § 9-4-4, Plaintiff is entitled to a declaratory judgment that BMTC is required to demand a deed from the LLC or to declare void ab initio the deed purporting

to convey title to the LLC and to distribute the Property to the Sisters per stirpes, as opposed to distributing to the Sisters shares of the LLC and that BMTC in enjoined from any contrary distribution.

## COUNT IV – DECLARATORY JUDGMENT AS TO GOODENOW LLC'S INTEREST IN THE PROPERTY

123.    Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraph 1 through 122 of her Second Amended Complaint as if fully stated herein.

124.    The LLC is a limited liability company formed under the laws of Delaware.

125.    The LLC may be served with process by serving its registered agent at Suite 101, Weldin Building, 3411 Silverside Road, Wilmington, Delaware 19810.

126.    The LLC is subject to the personal jurisdiction of this Court pursuant to Georgia's long arm statute, O.C.G.A. § 9-10-91, as the LLC has a purported interest in real property in Georgia which is the subject matter of this action, and the LLC, through its co-managers, is managing real property in Georgia. This action arises out of and relates to contacts of and acts committed by the LLC in the State of Georgia.

127.    As alleged herein, and as is disputed by Plaintiff, the LLC is a party which purports to have an interest in the Property.

128.    The LLC, through Defendants Vina and Anissa as co-managers, and in coordination with Defendant Bryn Mawr, has taken positions that are adverse to Plaintiff and in circumvention of the Trust with respect to the ownership and control over the Property, all to Plaintiff's detriment.

129.    The Sisters are co-managers of the LLC.

130.    Without informing Plaintiff, Vina and Anissa, through their purported ownership of the outstanding membership units of the LLC and as co-managers, have asserted control over the LLC and the Property. On information and belief, Vina and Anissa, since this action was filed,

have represented in tax filings that they own 100% of the LLC and diverted all tax benefits fo the Trust into the LLC.

131.     By contrast, BMTC has stipulated that it has not released Plaintiff's one third of the Trust and that it holds membership units of the LLC.

132.     Through their purported ownership of the units of the LLC, all Defendants have control over the LLC either as majority managers or through ownership of 100% of the outstanding membership interests, all to the exclusion and detriment of Plaintiff.

133.     Defendants have used the LLC to prevent the rightful distribution of the trust assets, including the Property, and have contended that the LLC owns the Property.

134.     Given the actions of the Defendants and the contentions made by or on behalf of the LLC, an actual controversy exists between Plaintiff and the LLC, and neither of the parties have sought by any other legal action to have their rights adjudicated with respect to legal title to the Property.

135.     Plaintiff and the LLC are interested in the determination of their rights and liabilities with respect to the Property, and the ends of justice require that declaratory relief be granted.

136.     Specifically, Plaintiff requires a declaration from this Court that: (a) the Deed was an invalid transfer, or in the alternative, was limited to the life of RCR; and (b) the LLC does not hold title to the Property.

137.     Plaintiff prays this Court enter a declaratory judgment against the Defendants and Goodenow that (a) the Deed was an invalid transfer, or in the alternative, was limited to the life of RCR; and (b) the LLC does not hold title to the Property.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that she has a trial on all issues and that the Court issue a declaratory judgment against Defendants as follows:

(i)      That this Court issue an interlocutory injunction enjoining and restraining Vina and Anissa from transferring or encumbering title to the Property or otherwise affecting Plaintiff's interest in the Property, until such time as this Court shall issue judgment declaring the rights and interests of the parties hereto;

(ii)     That this Court schedule a hearing on the issuance of an interlocutory injunction enjoining and restraining Vina and Anissa from transferring or encumbering title to the Property or otherwise affecting Plaintiff's interest in the Property, until such time as this Court shall issue judgment declaring the rights and interests of the parties hereto;

(iii)    That this Court enter a declaratory judgment that (a) the Sisters own the Property as tenants in common, each entitled to an immediate distribution by deed of her one-third undivided interest in the Property as required under the Trust, free and clear of any liens and encumbrances, with all rights attendant thereto pursuant to Georgia law or alternatively that Plaintiff owns a 1/3 undivided interest in the Property; (b) any conveyance of real property by RCR as Executor, including the Deed, to the LLC was an invalid transfer, or in the alternative, was limited to the life of RCR; (c) the LLC does not hold title to the Property; and (d) the Property may not be listed or sold without approval and consent of all the Sisters;

(iv)    That this Court enter a declaratory judgment with respect to Plaintiff's interests that (a) BMTC is required to demand a corrective deed from the LLC; (b) seek court approval to have the deed to the LLC declared void ab initio as to Plaintiff; and (c) to distribute Plaintiff's share of the Trust property, including the Property equitably and in accordance with the Trust Agreement free and clear of any liens, encumbrances or debts as of the date of RCR's death to the Sisters as tenants in common;

(v)     That this Court order Defendants to pay all costs of litigation, to include attorney's fees; and

(vi)    That Plaintiff have such other relief as is just and proper.

This 13th day of December, 2022.

*Signature on the following page*

WATSON SPENCE LLP
*Attorneys for Plaintiff*

<u>*/s/ F. Faison Middleton, IV*</u>
F. Faison Middleton, IV
Georgia Bar No. 504745
Post Office Box 2008
Albany, Georgia 31702-2008
(229) 436-1545 Telephone
(229) 436-6358 – Facsimile
fmiddleton@watsonspence.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2023, I electronically filed the foregoing *VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF* with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to all attorneys of records as follows:

Danielle C. LeJeune
COZEN O'CONNOR
1230 Peachtree Street, N.E.
The Promenade, Suite 400
Atlanta, GA 30309
dlejeune@cozen.com

Gregory T. Talley
A.A. Howell, IV
COLEMAN TALLEY LLP
109 S. Ashley Street
Valdosta, GA 31601
Greg.talley@colemantalley.com
Beau.howell@colemantalley.com

*/s/ F. Faison Middleton, IV*
F. Faison Middleton, IV
Georgia Bar No. 504745